**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

---

**NO. 22-3432**

---

**STEFAN GLADDEN,**

**Appellant,**

v.

**AMBLER HEALTHCARE GROUP, LLC d/b/a AMBLER EXTENDED
CARE CENTER**,

**Appellee.**

---

**BRIEF OF APPELLEE**

---

**Appeal from the December 15, 2022 Order of the
United States District Court for the Eastern District of Pennsylvania
No. 2:21-cv-04483-GAM**

> **FISHER & PHILLIPS LLP**
> **Michael R. Galey, Esquire**
> **Attorney I.D. No. 206847**
> **Deniz Uzel Reilly, Esquire**
> **Attorney I.D. No. 319127**
> **Two Logan Square, 12th Floor**
> **100 N. 18th Street**
> **Philadelphia, PA 19103**
> **(610) 230-2150**
>
> **Attorneys for Appellee**

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, Appellee, Ambler Healthcare Group, LLC d/b/a Ambler Extended Care Center[1], makes the following disclosure:

1)  For non-governmental corporate parties please list all parent corporations:

Ambler Healthcare Group, LLC is wholly owned by Saber Healthcare Holdings, LLC.

2)  For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

Not applicable.

3)  If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

Not applicable.

4)  In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

Not applicable.

_/s/ Michael R. Galey_          Dated:  July 12, 2023
Michael R. Galey, Esquire

---

[1]    Saber Healthcare Group, LLC is not listed as an Appellee because it was dismissed from this lawsuit and that dismissal is not at issue on appeal.

# Table of Contents

Table of Authorities ................................................................................ iii

INTRODUCTION ................................................................................... 1

I.    STANDARD OF REVIEW ............................................................. 3

II.   STATEMENT OF ISSUES PRESENTED FOR REVIEW ............. 5

III.  STATEMENT OF THE CASE ....................................................... 6

      A.   Procedural History ................................................................. 6

      B.   Rulings Presented for Review ................................................ 7

      C.   Facts Relevant to Issues Submitted for Review .................... 7

           a. Gladden's Employment with Ambler ............................... 7

           b. Gladden's Termination from Ambler ............................ 13

           c. Gladden's Unrelated Report to Human Resources ......... 16

           d. Ambler's Workplace Policies ......................................... 16

IV.  SUMMARY OF THE ARGUMENT ............................................ 19

V.   ARGUMENT ............................................................................... 22

      A.   The District Court Properly Grated Summary Judgment as to Gladden's Claims of Retaliation Under Title VII and the PHRA ....... 22

          1. The District Court Properly Held that Gladden did not establish a prima facie case of retaliation under Title VII or the PHRA ............. 23

          2. The District Court properly held that Ambler set forth a legitimate, non-discriminatory reason for Gladden's termination ....................... 29

          3. The District Court properly held that Gladden failed to set forth evidence of pretext ............................................................................ 32

      B.   The District Court Properly Granted Summary Judgment in Favor of Ambler as to Gladden's Claims of Hostile Work Environment Under Title VII and the PHRA ................................................................... 35

          1. The District Court properly concluded that Gladden failed to establish the existence of severe or pervasive harassment ................. 37

          2. The District Court properly held that Gladden failed to establish that he was detrimentally affected by the purported harassment. ............. 41

3. The District Court properly held that Gladden failed to set forth respondeat superior liability. ................................................. 43

VI. CONCLUSION ................................................................................ 47

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ..................................... 48

CERTIFICATE OF BAR ADMISSION ............................................................... 49

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS .......................... 49

CERTIFICATE OF VIRUS CHECK COMPLIANCE ........................................... 49

CERTIFICATE OF SERVICE ............................................................................... 50

# Table of Authorities

**Cases**                                                           **Page(s)**

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)........................................................................4

Andreoli v. Gates,
    482 F.3d 641 (3d Cir. 2007) ...................................................44, 45

Brewer v. Quaker State Oil Refin. Corp.,
    72 F.3d 326 (3d Cir. 1995) .............................................................33

Brooks v. CBS Radio Inc.,
    342 F. App'x 771 ...........................................................................37

Cabrera-Diaz v. Penn Kidder Campus Jim Thorpe Area Sch. Dist.,
    No. CIV.A. 08-2192, 2011 WL 613383 (M.D. Pa. Feb. 11, 2011)...................25

Carter v. Biomat USA,
    No. CIV.A. 10-4479, 2012 WL 606822 (E.D. Pa. Feb. 24, 2012).....................42

Castleberry v. STI Grp.,
    863 F.3d 259 (3d Cir. 2017) ...........................................................40

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)........................................................................4

Chase v. Frontier Commc'ns Corp.,
    361 F. Supp. 3d 423 (M.D. Pa. 2019)...............................................35

Clark Cnty. Sch. Dist. v. Breeden,
    532 U.S. 268 (2001)......................................................................37

Daniels v. Sch. Dist. of Phila.,
    776 F.3d 181 (3d Cir. 2015) ...........................................................23

Davis v. City of Newark,
    285 F. App'x 899 (3d Cir. 2008) ...................................35, 37, 41, 42

Dorsey v. Pittsburgh Assocs.,
    90 F. App'x 636 (3d Cir. 2004) .....................................................22

FP 47655395.1

Edwards v. Pa. Tpk. Comm'n,
  80 F. App'x 261 (3d Cir. 2003) ............................................................4

Eisenstein v. City of New York, New York,
  556 U.S. 928 (2009) ............................................................................3

Ellingsworth v. Hartford Fire Ins. Co.,
  247 F. Supp. 3d 546 (E.D. Pa. 2017) .................................................24

Fontroy v. Beard,
  559 F.3d 173 (3d Cir. 2009) ...............................................................3

Frazier v. Exide Techs.,
  No. CV.A. 11-1863, 2016 WL 6600262 (E.D. Pa. Nov. 8, 2016) .....................35

Fuentes v. Perskie,
  32 F.3d 759 (3d Cir. 1994) ..........................................................29, 33

Funayama v. Nichia Am. Corp.,
  No. CIV.A. 08-5599, 2011 WL 1399844 (E.D. Pa. Apr. 13, 2011).................39

Gharzouzi v. Nw. Hum. Servs. of Pa.,
  225 F. Supp. 2d 514 (E.D. Pa. 2002) .................................................39

Harding v. CareerBuilder, LLC,
  No. CIV.A. 04-0188, 2005 WL 396576 (E.D. Pa. Feb. 18, 2005).....................31

Huffsmith v. Yellow Transp., Inc.,
  No. CIV.A. 05-652, 2006 WL 2371977 (M.D. Pa. Aug. 15, 2006).................32

Huston v. P&G Paper Prods. Corp.,
  568 F.3d 100 (3d Cir. 2009) ........................................................43, 45

James v. Tri-Way Metalworkers, Inc.,
  189 F. Supp. 3d 422 (M.D. Pa. 2016).................................................39

Jensen v. Potter,
  435 F.3d 444 (3d Cir. 2006), overruled in part on other grounds by
  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).....................44

Knabe v. Boury Corp.,
  114 F.3d 407 (3d Cir. 1997) ........................................................45, 46

Local No. 48, United Bhd. of Carpenters & Joiners of Am. v. United
    Bhd. of Carpenters & Joiners of Am.,
    920 F.2d 1047 (1st Cir. 1990).....................................................................4

Matos v. Merck & Co.,
    No. CIV.A. 13- 2648, 2015 WL 894253 (E.D. Pa. Mar. 3, 2015),
    aff'd, 643 F. App'x 187 (3d Cir. 2016) .................................................23

McDonnell Douglas Corporation v. Green.
    411 U.S. 792 (1973)...................................................22, 29, 30, 32

Mincevich v. Bavarian Pretzel Bakery,
    418 F. Supp. 2d 634 (M.D. Pa. 2005)....................................................31

Moore v. City of Philadelphia,
    461 F.3d 331 (3d Cir. 2006) ...................................................................24

Mufti v. Aarsand & Co., Inc.,
    667 F. Supp. 2d 535 (W.D. Pa. 2009)..........................................39, 44

Olivieri v. Cnty. of Bucks,
    811 F. Supp. 2d 1112 (E.D. Pa. 2011), aff'd, 502 F. App'x 184 (3d
    Cir. 2012) ................................................................................................27

Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Md.,
    989 F.2d 635 (3d Cir. 1993) .....................................................................3

Rodriguez v. Our Lady of Lourdes Med. Ctr.,
    552 F.3d 297 (3d Cir. 2008), as amended (Jan. 13, 2009) ...................3

Selvanthan v. Opportunities Industrialization Ctrs Int'l,
    871 F. Supp. 2d 349 (E.D. Pa. 2012)....................................................24

Singletary v. Missouri Dep't of Corr.,
    423 F.3d 886 (8th Cir. 2005) .................................................................39

J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.,
    593 F.3d 286 (3d Cir. 2010), reh'g en banc granted, opinion
    vacated on other grounds (Apr. 9, 2010) .................................................3

Solomon v. Soc'y of Auto. Eng'rs,
    41 F. App'x 585 (3d Cir. 2002) ................................................................4

Verma v. Univ. of Pa.,
      No. CIV.A. 11-611, 2012 WL 1835727 (E.D. Pa. May 18, 2012),
      aff'd, 533 F. App'x 115 (3d Cir. 2013) ............................................................28

Williams v. Borough of W. Chester, Pa.,
      891 F.2d 458 (3d Cir. 1989) ................................................................................4

Young v. J.B. Hunt Transp., Inc.,
      No. 11-5518, 2013 WL 526814 (E.D. Pa. Feb. 13, 2013)..................................22

FP 47655395.1

# INTRODUCTION

Appellant Stephan Gladden alleges that he was terminated from employment at Ambler because of his complaints of race discrimination and that he was subjected to a hostile work environment motivated by his race.  In reality, Gladden was terminated from Ambler on January 4, 2021 for persistent performance issues following progressive discipline.  These performance deficiencies culminated the evening prior to Gladden's termination when he, ***_admittedly_***, left work without permission and without completing his job responsibilities.  Prior to this incident, Gladden had recently been disciplined for engaging in this exact infraction, and, in the weeks leading up to his termination, Gladden received both verbal and written discipline relating to his job performance.  As demonstrated by the record, although Gladden was given opportunities to succeed, he did not take advantage of them and continued to unsatisfactorily perform his job responsibilities, which is what ultimately led to Ambler's legitimate, non-discriminatory, and non-retaliatory decision to terminate his employment.

Following the opportunity for the parties to conduct full and complete discovery, Ambler filed a motion for summary judgment in which it sought judgment on each of the causes of actions asserted by Gladden in his Complaint.  On December 15, 2022, the District Court granted Ambler's motion for summary judgment in its entirety.

Appellant noticed his appeal of the District Court's December 15, 2022 decision and filed Appellant's Brief on June 12, 2023.  Nothing in Appellant's Brief calls into question or undermines the reasoning of the District Court's decision to grant summary judgment in favor of Ambler.  Accordingly, that decision should be affirmed.

FP 47655395.1

## I.   STANDARD OF REVIEW

Challenges to the District Court's decision on a motion for summary judgment are subject to plenary review.  Fontroy v. Beard, 559 F.3d 173, 177 (3d Cir. 2009) (citing Nasir v. Morgan, 350 F.3d 366, 368 (3d Cir. 2003)).  In exercising plenary review, the Court of Appeals applies the same test utilized by the District Court.  Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Md., 989 F.2d 635, 637 (3d Cir. 1993).

Plenary review does not limit this Court to the District Court's rationale. The Court of Appeals may affirm the entry of summary judgment on any ground revealed by the record.  Kossler, 564 F.3d at 186; J.S. ex rel. Snyder v. Blue Mountain Sch. Dist., 593 F.3d 286, 298 n.5 (3d Cir. 2010) ("We may affirm the District Court on alternate grounds, provided that the record supports the judgment."), reh'g en banc granted, opinion vacated on other grounds (Apr. 9, 2010), on reh'g en banc, 650 F.3d 915 (3d Cir. 2011); Rodriguez v. Our Lady of Lourdes Med. Ctr., 552 F.3d 297, 303 (3d Cir. 2008), as amended (Jan. 13, 2009), and abrogated on other grounds by U.S. ex rel. Eisenstein v. City of New York, New York, 556 U.S. 928 (2009) ("Because our review is de novo, we may affirm the District Court's order on alternate grounds.").

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

3

Fed. R. Civ. P. 56(a).  Specifically, summary judgment should be entered when the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Evidence that is based on conjecture or farfetched supposition is not sufficient to derail the operation of the rule."  Local No. 48, United Bhd. of Carpenters & Joiners of Am. v. United Bhd. of Carpenters & Joiners of Am., 920 F.2d 1047, 1051 (1st Cir. 1990); see also Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (explaining that non-moving party must raise "more than a mere scintilla of evidence in its favor . . . and cannot simply reassert factually unsupported allegations contained in its pleadings").  Similarly, evidence that is "merely colorable . . . or is not significantly probative" will not defeat summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

Further, an appellant's reliance on his testimony alone is insufficient to establish a material issue of fact and overcome a motion for summary judgment.  See Solomon v. Soc'y of Auto. Eng'rs, 41 F. App'x 585, 586 (3d Cir. 2002).  "To be a genuine issue, the evidence must be 'such that a reasonable jury could return a verdict for the non-moving party.'"  Edwards v. Pa. Tpk. Comm'n, 80 F. App'x 261, 263 (3d Cir. 2003) (quoting Anderson, 477 U.S. at 248).

4

## II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW

A.    Did the District Court properly conclude that summary judgment was appropriate as to Appellant Stefan Gladden's claims for retaliation under Title VII of the Civil Rights Act and under the Pennsylvania Human Relations Act?

Suggested Response:  **Yes.**

B.    Did the District Court properly conclude that summary judgment was appropriate as to Appellant Stefan Gladden's claims for hostile work environment under Title VII of the Civil Rights Act and under the Pennsylvania Human Relations Act?

Suggested Response:  **Yes.**

5

## III.    STATEMENT OF THE CASE

### A.    Procedural History

Appellant Stefan Gladden ("Gladden") filed a Complaint in the United States District Court for the Eastern District of Pennsylvania (the "District Court") on October 13, 2021, initiating this action.  SAppx25-38.[2]  In the Complaint, Gladden alleges three causes of action against Ambler Healthcare Group, LLC d/b/a Ambler Extended Care Center ("Ambler")[3]:  race discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act ("Title VII") and the Pennsylvania Human Relations Act (the "PHRA").  Id.

On August 15, 2022, Ambler filed the Motion of Defendants Ambler Healthcare Group, LLC d/b/a Ambler Extended Care Center and Saber Healthcare Group for Summary Judgment (the "Motion for Summary Judgment") in which Ambler sought judgment in its favor on all causes of action.  SAppx22-24.  On September 6, 2022, Gladden filed Plaintiff's Opposition to the Defendant's Motion

---

[2]    Appellant filed Volume I of his Appendix with Appellant's Brief and Bates-numbered Volume I of the Appendix as "Appx1-21," and Appellant filed Volume II of his Appendix at the same time and Bates-numbered Volume II of the appendix as "SAppx22-514."  Ambler refers to the Appendices herein as numbered by Gladden.

[3]    Although Saber Healthcare Group, LLC ("Saber") is also listed as a Defendant in the Complaint, Saber was dismissed from this lawsuit and that dismissal is not at issue on appeal.  Thus, Saber's position and defenses will not be addressed herein.

for Summary Judgment, and, on September 13, 2022, Ambler filed its Reply Brief in further support of the Motion for Summary Judgment.  SAppx22-24.

On December 15, 2022, Judge McHugh issued a Memorandum and Order entering judgment in favor of Ambler on all claims set forth in the Complaint. Appx4-21.  On December 22, 2022, Gladden filed a Notice of Appeal.  Appx1-21. On June 12, 2023, Gladden filed Appellant's Brief and Appendix, Volumes I-II. ECF Nos. 15-16.

## B.    Rulings Presented for Review

Gladden alleges that the District Court erred in dismissing the retaliation and hostile work environment claims against Ambler and suggests that issues of material fact exist for both of those causes of action.  Ambler disagrees and asks that this Honorable Court affirm the District Court's ruling.

## C.    Facts Relevant to Issues Submitted for Review

### a.    Gladden's Employment with Ambler

Gladden is an African American man.  SAppx29.  He began his employment with Ambler in August 2019, working as a Dietary Aide.  SAppx84, SAppx99. As a Dietary Aide, he was generally responsible for assisting "in food preparation and service while maintaining clean and sanitary conditions in the kitchen and dining areas under the supervision of the Dietary Manager or Cook."  SAppx104-05, SAppx144-48; see also SAppx99-103 (listing various other job responsibilities).

As a Dietary Aide, Gladden could have been scheduled to work in one of four roles in the kitchen: (1) the pot person, (2) the snack person, also known as "nourishments," (3) the dining room person, or (4) the tray person.  SAppx155.

Throughout his employment, Gladden typically worked as either the pot or snack person depending on Ambler's needs.  SAppx99, SAppx155.  When Ambler was short-staffed, Gladden was expected to do more than one job.  SAppx106.

As the pot person, Gladden's responsibilities included washing dishes, washing pots, hanging pots, putting away pots, hanging cooking utensils, trash removal, cleaning, sweeping, mopping, wiping counters down, washing out trash cans, and making sure the dish washing area was clean, among other things.  SAppx99-104, SAppx182-83.  As the snack person, Gladden's responsibilities included cleaning the coffee machine and making sure it was turned off, keeping the nourishment station clean, ensuring that food items, trash, and silverware were not left out at the end of the shift, maintaining snacks, and assisting with service of food trays, among other things.  SAppx102, SAppx157-58, SAppx227-28.

Gladden acknowledged receipt of his job description and affirmed, in writing, his agreement to abide by its terms when he commenced employment with Ambler.  SAppx105-06, SAppx185.  Gladden's Job Description specifically indicates that he "[m]ust be able to work beyond normal working hours and on weekends and holiday when necessary."  SAppx185.  Ambler relies on employees

8

to finish their job responsibilities before leaving the job site, and, when they are unable to do so within their normally scheduled hours, Ambler expects that employees stay later than scheduled.  SAppx161-62.

Thomas Downing, Director of Dietary at Ambler, was Gladden's direct supervisor.  SAppx152-54.  During Gladden's employment, Gladden received both verbal and written discipline from Mr. Downing related to his attendance, job performance, and interactions with coworkers.  SAppx109, SAppx195-96, SAppx199, SAppx201, SAppx203, SAppx205-06, SAppx208-09, SAppx211, SAppx227-28.  Each written discipline warned that further violation of facility policy could result in disciplinary action up to and including the termination of Gladden's employment.  SAppx199, SAppx201, SAppx203, SAppx205, SAppx208, SAppx211, SAppx227.  Whenever Gladden was issued written discipline, his union representative was present.  SAppx109.  Gladden did not grieve any of the discipline that he received at Ambler through his union.  SAppx112.  Related to his attendance, Gladden accrued several call-outs and was issued disciplinary action for those as well.  SAppx110-13, SAppx199, SAppx201.

Related to his failure to perform his job responsibilities, in late November 2020, Gladden was issued a Verbal Warning for leaving work without sufficiently cleaning and closing down his kitchen area, failing to record dish machine water temperature and sanitation concentration, and failing to appropriately clean and

9

maintain the pot area, dishwasher, or the cook line. SAppx203. Gladden recalls a

verbal discussion with Mr. Downing about work expectations, but does not believe

that he was the pot person during the incident in question. SAppx115-18.

Just over three weeks later, on December 22, 2020, Gladden was presented

with another Written Warning for leaving work without completing his job duties.

SAppx118, SAppx205-06. Specifically, Gladden was disciplined for leaving four

dirty pans in the pot sink, leaving the dustpan, broom, a dirty mop, and bucket out

in front of the cook line, not taking boxes out to recycle, leaving an air handler fan

out by the ice machine, and not recording the water temperature and sanitizer.

SAppx205-06. Gladden admits that he received and executed this Written

Warning in December 2020. SAppx118. Gladden further admits speaking with

Mr. Downing about his poor performance at that time and receiving general write-

ups relating to his poor performance. SAppx119-20.

One week later, on December 29, 2020, Ambler documented yet another

instance of Gladden leaving work without completing his job responsibilities.

SAppx208-09 ("1) All trash not taken out – 1 full can left in dish drop area

2) Broom + Dust Pan left out 3) Mop + Bucket not emptied or put away 4) Dish

machine not drained – full of dirty H2O – drain + plug very dirty – catch under

dish machine left with food debris in it 5) Racks left on clean side of dish machine

smallwares not put away 6) Box cart left by walk-ins! 7) China plates were gritty +

10

dirty – had to be re-washed – used disposable plates"). Gladden does not recall seeing this write-up. SAppx120-21.

In December 2020, Gladden also received counselling for his interaction with his fellow Dietary Aide, Mindi Shorr. SAppx82, SAppx211. Gladden frequently argued with Ms. Shorr. SAppx81, SAppx83-84, SAppx114. When asked whether he ever called Ms. Shorr any names, he responded: "Oh, yeah. We used to laugh and joke. I would call her a parrot. I would make squawking noises and everybody would laugh." SAppx86. Gladden also referred to Ms. Shorr as a "murderer" because he was told that, before he started working at Ambler, Ms. Shorr hit a resident with her cart and the resident, thereafter, died. Id. Gladden admitted that he did not know if this incident actually happened, but his knowledge of this incident is why he called her a murderer. Id.

Gladden alleges that Ms. Shorr called him a monkey on three occasions in the kitchen while he was working. SAppx78-79, SAppx81, SAppx84. He does not remember the specific date(s) when these incidents occurred. SAppx78. Gladden never reported to Ambler that he was called a monkey by Ms. Shorr. SAppx80 ("Q: Did you ever report this incident? A: No. I let it go."), SAppx83 ("But somebody had to tell Tom, because I didn't personally tell him."), SAppx84 ("Q: And did you go to HR? A: No, I never went. Q: So just to be clear, you never went to HR for any of these incidents. Tom and Karen came to you, right?

A: Yes."). Gladden's failure to report Ms. Shorr's conduct was further

corroborated by the testimony of Karen Pulini, Ambler's Administrator, ("Q: Did

Mr. Gladden ever complain to you directly about anything involving his

employment that you can remember? A: No, I don't believe so.") and

Mr. Downing ("Q: . . . did Mr. Gladden ever complain to you that Ms. Shorr had

called him a monkey? A: No. Q: Okay. Do you know whether Mr. Gladden ever

complained to anyone that Ms. Shorr had called him a monkey? A: Not to my

knowledge."). SAppx173, SAppx215, SAppx222.

The only corroborated instance of Ms. Shorr calling Gladden a monkey

occurred on December 20, 2020 – on that date, Gladden got into a "heated

argument" with Ms. Shorr wherein he called Ms. Shorr a "murderer" and

Ms. Shorr called Gladden a "monkey." SAppx211. That same day, Ms. Shorr, *not*

*Gladden*, told Mr. Downing that she called Gladden a monkey because he called

her a murderer. SAppx172, SAppx174-75. The next day, December 21, 2020,

Ms. Pulini was informed of this incident. SAppx 221. That same day,

December 21, 2020, Gladden and Ms. Shorr were brought into a joint meeting in

Ms. Pulini's office, with Mr. Downing present, where the incident was discussed.

SAppx85-86, SAppx176, SAppx211. Both employees were told not to engage in

this kind of name-calling again, and both employees were warned that further

interactions of this sort would lead to termination. SAppx176, SAppx211. During

this discussion, Gladden was told that Ms. Shorr went home crying after the December 20, 2020 interaction between them, and that is when Gladden agreed to stop calling Ms. Shorr a murderer.  SAppx114.  Ms. Shorr, in turn, agreed that she would not call Gladden any names again.  Id.  During the discussion in Ms. Pulini's office, Ms. Shorr apologized to Gladden.  SAppx220.  Gladden testified: "that was the end of that situation."  SAppx114.  It is undisputed that after the December 21, 2020 discussion, Ms. Shorr did not call Gladden a monkey again.  SAppx86-87, SAppx89, SAppx114.  Ms. Shorr and Gladden were both issued counseling related to this incident.  SAppx171, SAppx176, SAppx218-19.

      b.    <u>Gladden's Termination from Ambler</u>

On January 3, 2021, Gladden was scheduled to work from 7:00 am to 7:00 pm.  SAppx121.  Because Ambler was short-handed on this day, Gladden was responsible to cover several shifts, including the 11:00 am to 7:00 pm shift as the snack person.  SAppx107-08, SAppx157.  Gladden was the only Dietary Aide assigned as the snack person from 11:00 am to 7:00 pm on January 3, 2021.  SAppx158.  Shelby, another Dietary Aide, was scheduled to work as a pot person from 11:00 am to 7:00 pm.  SAppx158, SAppx225.

The evening of January 3, 2021, despite being previously warned about his work performance and finishing his tasks, Gladden ***admittedly*** left work without permission and without completing his job responsibilities:

13

Q:     Okay. And what time did you leave on that
       Saturday, on January 3rd?

A:     I left at – it was Saturday night.  It was 7:00.
       That's what time I left.

Q:     And was all your tasks done at the –

A:     That was Sunday night. I'm sorry.  It was Sunday
       night.

Q:     Okay.  Were all your tasks done then, sir?

A:     No, no, they wasn't.

SAppx192; <u>see also</u> SAppx90-91, SAppx122-23, SAppx126, SAppx157,

SAppx193.  On his way out, Gladden asked Shelby, a minor, to complete his tasks

for him.[4]  SAppx90-91, SAppx122-23, SAppx126, SAppx159.

The next morning, on January 4, 2021, when Mr. Downing came to work, he

discovered that the tables in the nourishment station were left dirty with food

product and liquid on them; the food items that were left on the tables had to be

thrown out because they were out all night (a container of Nectar Cranberry juice,

3 portions of applesauce, 19 cups of yogurt, 28 mighty shake supplements, and 2

lactaid milks), the coffee machine was left on and dirty, trash and used gloves were

left on the table, and dirty silverware was left on the front of the cook line and on

---

[4]     Ambler's "Quitting and Leaving Early" policy requires employees to receive
approval from their Department Head or Supervisor prior to leaving work early
and indicates that failure to do so may result in disciplinary action.  SAppx177-78,
SAppx234.  Mr. Downing has written up other employees who have failed to
contact him prior to trading shifts or covering each other's shifts.  SAppx179.

the prep table.  SAppx 164, SAppx156-57, SAppx164-65, SAppx227-28.  The spoiled food product that was left out overnight and had to be thrown away resulted in a financial loss for Ambler.  SAppx91, SAppx156-57, SAppx194, SAppx227-28.  The coffee pot being left out overnight also presented a significant fire hazard for Ambler.  SAppx156.

That morning, Mr. Downing met with Ms. Pulini and explained that he wanted to terminate Gladden's employment based on the foregoing.  SAppx169-70.  Mr. Downing thereafter met with Gladden, with Gladden's union representative present, and notified Gladden of his infractions, indicating to him that he was being terminated because of those infractions.  SAppx91, SAppx124-26, SAppx163-66.  Gladden acknowledges that he was terminated for his failure to complete his job responsibilities on January 3, 2021.  SAppx91.

The record confirms that Gladden was terminated on January 4, 2021 for continued poor work performance that was unrectified despite progressive discipline, and for no other reason.  SAppx155-56, SAppx165-66, SAppx189-90, SAppx217, SAppx227-28.

Shelby was not disciplined for the January 3, 2021 incident.  SAppx160.  Shelby is also African American.  SAppx140.

15

c.   Gladden's Unrelated Report to Human Resources

One year prior to his termination, in January 2020, Gladden alleges that he went to Human Resources to complain about the fact that Mr. Downing had scheduled him to work every weekend.  SAppx92-93.  Gladden's report to Human Resources did not relate to his race in any way.  Id.  Thereafter, Gladden's schedule was changed, and he was granted every other weekend off.  SAppx168, SAppx502.  Gladden alleges that, as a result of his complaint about his schedule, Mr. Downing called him a "cock sucker" to another employee on one occasion.  SAppx92-93, SAppx95.  Gladden did not personally witness Mr. Downing calling him a "cock sucker."  SAppx92-94.  Gladden is not aware of any other names that Mr. Downing has called him.  SAppx95.  Mr. Downing denies ever calling Gladden, or any other Dietary Aides, any foul names.  SAppx167-68.  Ambler has never received any complaints about Mr. Downing's conduct in the workplace involving the use of obscene or foul language.  SAppx222.

d.   Ambler's Workplace Policies

Throughout his employment at Ambler, Gladden was a union member. SAppx111.  As a result, Gladden's employment was governed by both Ambler's Employee Handbook and the applicable Collective Bargaining Agreement ("CBA").  SAppx129-30, SAppx230-39, SAppx241-57.  Gladden understood that Ambler had a handbook with which he was expected to comply.  SAppx128.

16

Gladden affirmed, in writing, his responsibility to read and comply with the policies contained in Ambler's Employee Handbook.  SAppx127, SAppx262.

As an equal opportunity employer, Ambler maintains policies prohibiting discrimination, harassment, and retaliation in the workplace based on, among other things, race.  SAppx231-33.  This policy clearly outlines Complaint/Reporting Procedures and provides that no reprisal, retaliation, or other adverse action will be taken against any employee who makes a good faith report of unlawful discrimination or harassment in the workplace.  SAppx232-33.  Further, notices are posted on Ambler's bulletin board advising employees of their rights against discrimination, harassment, and retaliation under state and federal laws and notifying employees on how to contact Ambler's Corporate Compliance Hotline to report any issues.  SAppx259.  Ambler also maintains an Open-Door Policy to foster open lines of communication within the organization as a means for employees to resolve work-related problems and concerns.  SAppx235.

With respect to employee discipline, Ambler maintains a Progressive Discipline Process.  SAppx236-38.  The Progressive Discipline Process outlines a three-step system in which employees are given a Verbal Warning for a first offense, a Written Warning for a second offense, and are terminated for a third offense.  Id.  There is, of course, certain conduct that can subject an employee to immediate termination or otherwise warrant skipping a disciplinary step in the

17

process.  Id.  "Refusal to carry out work assignments as directed (insubordination)"
is listed as a Critical Offense, which is considered so serious in nature that it will
typically result in immediate discharge.  Id.  "Continued inability to meet job
requirements" is listed as a Major Offense, which is considered so serious in nature
to merit a Written Warning for a first occurrence.  Id.  Per the CBA, Ambler has
the right to discharge, suspend, or discipline any employee for just cause.
SAppx247.

Gladden does not have any documents in support of his claims in this
lawsuit.  SAppx75.  Indeed, Gladden did not produce a single document in
discovery to Ambler while the matter was pending in the District Court.

## IV.  <u>**SUMMARY OF THE ARGUMENT**</u>

Gladden was terminated from employment on January 4, 2021 after leaving work the night prior without completing his job duties, although he had previously been counseled several times on this very same issue.  The record supports this legitimate, nondiscriminatory reason for Gladden's termination and Gladden has been unable to set forth any evidence that the decision to terminate his employment was made with retaliatory animus or that he was subjected to a hostile work environment due to his race prior to his termination of employment.

Gladden alleges that the decision to terminate his employment was retaliatory because his termination followed shortly after a December 21, 2020 counseling meeting wherein his co-worker (Ms. Shorr) was counseled for calling him a "monkey" at work.  Significantly, however, Gladden had been disciplined for the same conduct he was terminated for *before* the counseling meeting.

Summary judgment was properly granted as to Gladden's retaliation claim for several reasons, each of which present an independent basis for this Court to affirm the judgment in Ambler's favor: (1) Gladden did not engage in protected activity; (2) Ambler did not terminate Gladden after or contemporaneous with any protected activity; (3) there was no causal connection between Gladden's participation in any protected activity and his termination; (4) Ambler has set

19

forth a legitimate, non-discriminatory reason for Gladden's termination; and (5) Gladden has not set forth evidence of pretext.

Gladden also alleges that he was subjected to a hostile work environment because Ms. Shorr called him a monkey three times in the presence of other co-workers and Ambler did not appropriately respond to those incidents. The record demonstrates, however, that Ambler counseled Ms. Shorr immediately after being informed of the single corroborated incident and that Ms. Shorr's alleged behavior stopped after the counseling meeting. Summary Judgment was properly granted by the District Court as to Gladden's hostile work environment claim for several, independent reasons (each of which provides sufficient basis to affirm the District Court's grant of judgment in Amblers favor), including: (1) Gladden has not set forth evidence to establish that he was subjected to "severe or pervasive" discrimination; (2) Gladden has not set forth evidence that he was detrimentally affected by the alleged offending conduct; and (3) Gladden has not set forth evidence to demonstrate employer liability.

In his Brief, Gladden fails to identify any material facts in dispute that should result in this Court setting aside the District Court's grant of summary judgment as to Gladden's claims of retaliation and hostile work environment. Instead, for the reasons set forth herein, the undisputed facts are sufficient to

warrant this Court affirming judgment in Ambler's favor on Gladden's claims of retaliation and hostile work environment.

FP 47655395.1

## V.    ARGUMENT

### A.    The District Court Properly Grated Summary Judgment as to Gladden's Claims of Retaliation Under Title VII and the PHRA

Gladden fails to present any argument to this Court that undermines the District Court's well-reasoned opinion granting summary judgment in favor of Ambler.  Ultimately, Gladden cannot sustain his evidentiary burden of establishing retaliation under the McDonnell Douglas analytical framework and, therefore, summary judgment was appropriate as to his claims of retaliation.

In the Third Circuit, absent direct evidence of retaliation, courts analyze retaliation claims under Title VII and the PHRA pursuant to the burden-shifting analysis set forth in McDonnell Douglas Corporation v. Green.  411 U.S. 792, 802 (1973); see Young v. J.B. Hunt Transp., Inc., No. 11-5518, 2013 WL 526814, *2 (E.D. Pa. Feb. 13, 2013).  The first prong of the three-part McDonnell Douglas analysis is a determination of whether Gladden has met his initial obligation to establish a prima facie case of retaliation.  411 U.S. at 793.  If Gladden fails to establish a prima facie case, the court can dispose of the case "without the heavy lifting that is required if a prima facie case is made out."  Dorsey v. Pittsburgh Assocs., 90 F. App'x 636, 639 (3d Cir. 2004).  "If [Gladden] is successful in making out a *prima facie* case, the burden shifts to [Ambler] to articulate some legitimate, nondiscriminatory reason for [its] action."  Id. at 638 (internal citations omitted).  "If [Ambler] satisfies this 'relatively light' burden, the burden of

production shifts back to [Gladden] to 'provide evidence from which a factfinder could reasonably infer that [Ambler's] proffered justification is merely a pretext for [retaliation].'" <u>Matos v. Merck & Co.</u>, No. CIV.A. 13- 2648, 2015 WL 894253, at *7 (E.D. Pa. Mar. 3, 2015), <u>aff'd</u>, 643 F. App'x 187 (3d Cir. 2016) (quoting <u>Burton v. Teleflex Inc.</u>, 707 F.3d 417, 426 (3d Cir. 2013)). "Although the burden of production of evidence shifts back and forth, [Gladden] has the ultimate burden of persuasion at all times." <u>Daniels v. Sch. Dist. of Phila.</u>, 776 F.3d 181, 193 (3d Cir. 2015).

For the reasons that follow, Gladden has failed to establish a prima facie case of retaliation, Ambler has set forth a legitimate, non-retaliatory reason for Gladden's termination, and Gladden has failed to set forth evidence of pretext as to Ambler's reason for the termination of Gladden's employment. As such, this Court should affirm the District Court's entry of summary judgment on Gladden's retaliation claim.

1. <u>The District Court Properly Held that Gladden did not establish a prima facie case of retaliation under Title VII or the PHRA</u>

The District Court granted judgment in favor of Ambler as to Gladden's retaliation claims due to Gladden's failure to establish a prima facie case of retaliation. To establish a prima facie case of retaliation, Gladden must provide evidence that: (1) he engaged in protected activity; (2) his employer took an adverse employment action against him after or contemporaneous with the

protected activity; and (3) there was a causal connection between his participation

in the protected activity and the adverse employment action.  See Moore v. City of

Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006).  Ultimately, Gladden cannot

establish the first or third elements of his prima facie retaliation claim, and,

accordingly, the District Court's grant of summary judgment should be affirmed.

> a.    The District Court properly held that Gladden did not
>        engage in protected activity

The District Court held that Gladden did not engage in a protected activity

and, as a result, could not establish a prima facie case of retaliation.  Appx13.

Specifically, the District Court noted that Gladden had neither filed a formal

charge of retaliation nor made an informal complaint of retaliation.  Appx13.

Nothing in the record or Appellant's Brief undermines the District Court's

conclusion.

"An employee engages in protected activity by complaining to his or her

employer about conduct that is prohibited by Title VII."  Ellingsworth v. Hartford

Fire Ins. Co., 247 F. Supp. 3d 546, 555 (E.D. Pa. 2017).  Without a complaint of

conduct prohibited by Title VII, there can be no protected activity.  See Selvanthan

v. Opportunities Industrialization Ctrs Int'l, 871 F. Supp. 2d 349, 367 (E.D. Pa.

2012) ("Defendant argues, *inter alia*, that plaintiff cannot show that he engaged in

protected activity because he 'never complained about age discrimination related

to [his manager's] treatment of him.'  The Court agrees with defendant." (citation

24

omitted)); <u>Cabrera-Diaz v. Penn Kidder Campus Jim Thorpe Area Sch. Dist.</u>, No. CIV.A. 08-2192, 2011 WL 613383, at *4 (M.D. Pa. Feb. 11, 2011) (noting, when entering judgment in defendant's favor on plaintiff's retaliation claim that "[h]ere, there is no evidence that any protected activity was engaged in; [plaintiff] testified that she never complained about any type of discrimination").

As the District Court noted, it is undisputed that Gladden never made a complaint of race discrimination or hostile work environment to Ambler.  Appx13; SAppx80 ("Q: Did you ever report this incident? A: No. I let it go."), SAppx83 ("But somebody had to tell Tom, because I didn't personally tell him."), SAppx84 ("Q: And did you go to HR?  A: No, I never went.  Q: So just to be clear, you never went to HR for any of these incidents. Tom and Karen came to you, right? A: Yes.").  Gladden's failure to report Ms. Shorr's conduct was further corroborated by the testimony of Ms. Pulini ("Q: Did Mr. Gladden ever complain to you directly about anything involving his employment that you can remember? A: No, I don't believe so.") and Mr. Downing ("Q: Okay. . . . did Mr. Gladden ever complain to you that Ms. Shorr had called him a monkey? A: No. Q: Okay. Do you know whether Mr. Gladden ever complained to anyone that Ms. Shorr had called him a monkey? A: Not to my knowledge.").  SAppx173, SAppx215, SAppx222. Accordingly, the District Court correctly found that Gladden failed to show that he engaged in a protected activity, and therefore had not established a prima facie

25

case of retaliation.  Appx13.  Gladden, in this proceeding, has not identified any

protected activity in which he engaged and, in fact, does not address the first prong

of the prima facie analysis in any way.  Appellant's Brief at pp. 21-25.

Thus, based on the foregoing, this Court should affirm the District Court's

grant of Summary Judgment, and the analysis as to Gladden's retaliation claims

can and should end here.

> b.    Gladden Failed to Establish A Causal Relationship Between a Protected Activity and the Termination of His Employment

Although the District Court did not review the third prong of the prima facie

retaliation case extensively, given its disposition of the claim on the first prong, it

did note that "it is also unlikely that Gladden would satisfy the third element of his

prima facie retaliation claim – causation…"  Appx13 n.4.  Even if this Court

concludes that Gladden established the first prong of his prima facie retaliation

claim, this Court can uphold the grant of Summary Judgment based on Gladden's

failure to establish the third prong of his prima facie retaliation case.

As an initial matter, without a protected activity, Ambler could not have

taken any adverse employment action against Gladden after or contemporaneous

with any protected activity and there could have been no causal connection

between Gladden's protected activity and his termination.  Moreover, Gladden

***admitted*** he had previously been disciplined for failing to complete his job

responsibilities, was terminated because of his failure to complete his job responsibilities on January 3, 2021, and that he actually engaged in the conduct that led to his termination.  SAppx192, SAppx203, SAppx208-09, SAppx118; <u>see also</u> SAppx90-91, SAppx122-23, SAppx157.  Thus, even if this Honorable Court were to find that Gladden engaged in a protected activity, such protected activity cannot be linked to Gladden's termination because Gladden has admitted that he left work without permission and without completing his job responsibilities, after being previously issued discipline and warned against engaging in the exact same behavior.  <u>See</u> SAppx90-91, SAppx118-20, SAppx122-23, SAppx126, SAppx193, SAppx205-06.  Simply because Gladden may have engaged in protected activity does not rid Gladden from his workplace responsibilities.  <u>See, e.g.</u>, <u>Olivieri v. Cnty. of Bucks</u>, 811 F. Supp. 2d 1112, 1125 (E.D. Pa. 2011), <u>aff'd</u>, 502 F. App'x 184 (3d Cir. 2012) (finding that employer's discipline was not discriminatory where plaintiff's repeated infractions were prohibited by policies applicable to all employees and plaintiff "had been given repeated notice, and for which [plaintiff] had been disciplined on many occasions before and after she engaged in protected activity").

In his Brief, Gladden ignores the first prong of his prima facie case and rests his retaliation claim on the argument that his termination followed shortly after the December 21, 2020 counseling meeting.  Appellant's Brief at p. 22-25.

27

Significantly, however, Gladden had been disciplined for the same conduct for which he was terminated ***before*** the December 21, 2020 counseling meeting. SAppx203, SAppx205-06, SAppx208-09.  The Third Circuit has "declined to infer retaliatory motive, even when temporal proximity exists, where an employee receives similar treatment both before and after engaging in a protected activity." Verma v. Univ. of Pa., No. CIV.A. 11-611, 2012 WL 1835727, at *10 (E.D. Pa. May 18, 2012), aff'd, 533 F. App'x 115 (3d Cir. 2013).  The Verma Court held that "despite [the existence of] temporal proximity, Plaintiff's causation argument fails because Plaintiff received similar treatment from her supervisors both before and after she engaged in a protected activity."  Id.  Here, there is no dispute that Gladden received discipline for his performance, including leaving the kitchen dirty, both before and after his counseling meeting.  SAppx203, SAppx205-06, SAppx208-09, SAppx227-28.

As the District Court noted in disposing of Gladden's discrimination claim, Gladden "ignores a significant intervening event after the meeting and immediately before his termination – his failure to clean and secure the kitchen, leaving food out overnight, and leaving the coffee maker on.  This incident seriously attenuates any logical connection between the meeting in December and [Gladden's]

28

termination in early January." Appx15-16.[5]  Thus, Gladden cannot establish causal

connection between his termination and any alleged protected activity under the

third prong of his prima facie retaliation case.  As such, this Court should affirm

the District Court's grant of Summary Judgment.

> **2.** The District Court properly held that Ambler set forth a
> legitimate, non-discriminatory reason for Gladden's termination

Even if Gladden could meet his burden of establishing a prima facie case of

retaliation, his claims still fail under the remaining prongs of the <u>McDonnell</u>

<u>Douglas</u> analysis.  Under the second prong of the <u>McDonnell Douglas</u> framework,

Ambler has articulated a legitimate, nondiscriminatory reason for Gladden's

termination.  <u>See</u> 411 U.S. at 802.  Ambler satisfies its "relatively light burden" by

"introducing evidence which, taken as true, would permit the conclusion that there

was a nondiscriminatory reason for the unfavorable employment decision."

<u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994).

The District Court noted, in disposing of Gladden's claims at the prima facie

stage, that Ambler "has introduced evidence showing a non-discriminatory reason

for [Gladden's] termination," and the record is clear that a legitimate reason exists

---

[5]     Gladden chose not to appeal the District Court's grant of summary judgment
as to his discrimination claim, demonstrating the logic of the District Court's
conclusion as to this point.  <u>See generally</u> Appellant's Brief.

for the termination of Gladden's employment.  Appx13 n.4.[6]  Specifically, despite

being previously warned about his work performance and finishing his tasks, on

January 3, 2021, Gladden ***admittedly*** left work without permission and without

completing his job responsibilities, asking Shelby, a minor, to complete his tasks

for him, in violation of company policy.[7]  See SAppx90-91, SAppx118-20,

SAppx122-23, SAppx126, SAppx157, SAppx159, SAppx192-93, SAppx205-06.

The next morning, on January 4, 2021, when Mr. Downing came into work, he

discovered that the tables in the nourishment station were left dirty with food

product and liquid on them; the food items that were left on the tables had to be

thrown out because they were out all night, the coffee machine was left on and

dirty, trash and used gloves were left on the table, and dirty silverware was left on

the front of the cook line and on the prep table.  SAppx156-57, SAppx165,

SAppx227-28.  That morning, Mr. Downing met with Ms. Pulini and explained

that he wanted to terminate Gladden's employment based on the foregoing.

SAppx169-70.  Mr. Downing thereafter met with Gladden, with Gladden's union

---

[6]    Although the District Court's analysis of the second prong of the McDonnell Douglas analysis appears under its review of Gladden's discrimination claim, the logic is equally applicable Gladden's retaliation claim.  See Appx13 n.4, Appx16-17.

[7]    Ambler's "Quitting and Leaving Early" policy requires employees to receive approval from their Department Head or Supervisor prior to leaving work early and indicates that failure to do so may result in disciplinary action.  SAppx177-78, SAppx234.

representative present, and notified Gladden of his infractions, indicating to him that he was being terminated because of those infractions.  See SAppx91, SAppx124-26, SAppx163-66.  Gladden acknowledges that he was terminated for his failure to complete his job responsibilities on January 3, 2021.  SAppx91. Further, prior to his termination, all of Gladden's written discipline indicated that further violation of facility policy will result in disciplinary action up to and including the termination of employment.  SAppx199, SAppx201, SAppx203, SAppx205, SAppx208, SAppx211, SAppx227.  Thus, the record confirms that Gladden was terminated on January 4, 2021 for continued poor work performance that was unrectified despite progressive discipline, and for no other reason. SAppx155-56, SAppx165-66, SAppx189-90, SAppx217, SAppx227-28.

"The Third Circuit has held that failure to meet employment goals is a legitimate, non-discriminatory reason for terminating employment."  Harding v. CareerBuilder, LLC, No. CIV.A. 04-0188, 2005 WL 396576, at *6 (E.D. Pa. Feb. 18, 2005) (citing Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1109 (3d Cir. 1997)), aff'd, 168 F. App'x 535 (3d Cir. 2006).  Because Gladden's failure to complete his job responsibilities is a legitimate, non-discriminatory reason for termination, Ambler has introduced sufficient evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the termination.  See Mincevich v. Bavarian Pretzel Bakery, 418 F. Supp. 2d 634, 640

31

(M.D. Pa. 2005) ("Failure to successfully fulfill one's job responsibilities is certainly a legitimate ground for termination."); Huffsmith v. Yellow Transp., Inc., No. CIV.A. 05-652, 2006 WL 2371977, at *6 (M.D. Pa. Aug. 15, 2006) ("Failure to follow a direct work order can be a legitimate non-discriminatory reason for termination of employment.").

With this backdrop, the District Court correctly found that Ambler set forth a non-discriminatory basis for the termination of Gladden's employment based on undisputed facts that "easily suffice to rebut a finding that unlawful discrimination caused [Gladden's] termination." See Appx16. This Court should affirm the District Court's finding that Ambler has established a legitimate nonretaliatory reason for the termination of Gladden's employment and fulfilled its burden under the second prong of the McDonnell Douglas analysis.

3.    The District Court properly held that Gladden failed to set forth evidence of pretext

Although the District Court disposed of Gladden's retaliation claim at the prima facie stage, the District Court, nevertheless, noted that "Plaintiff did not produce sufficient evidence from which a reasonable jury could conclude that the proffered reason for firing him was pretextual." Appx13 n. 4. Thus, even if Gladden had been able to establish his prima facie retaliation claim, summary judgment would still be appropriate because, under the third prong of the McDonnell Douglas analysis, Gladden failed to produce evidence from which a

32

reasonable jury could conclude that the proffered reason for firing him was pretextual, and he has failed to raise any such evidence on appeal.

To show pretext, Gladden "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. Gladden "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Ambler's] proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" Id. at 765 (quoting Ezold v. Wolf, Block, Schoor, and Solis-Cohen, 983 F.2d 509 (3d Cir. 1992)). Gladden cannot simply argue "that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." Fuentes, 32 F.3d at 765; see also Brewer v. Quaker State Oil Refin. Corp., 72 F.3d 326, 332 (3d Cir. 1995) ("[W]e do not sit as a super-personnel department that reexamines an entity's business decisions.").

Gladden provides four reasons to suggest that Ambler's termination decision was pretextual, all of which have already been correctly rejected by the District Court in its well-reasoned opinion, which should be affirmed by this Court:

First, [Gladden] notes that immediately following the meeting in which he and Shorr were counseled, [Gladden] was written up several more times.  But [Ambler] has introduced evidence showing credible, non-discriminatory reasons for writing up [Gladden]—reasons that align with documented performance issues that existed from before the counseling meeting.  So merely pointing to the fact that he *was* written up does not suffice to show pretext.  Second, [Gladden] contends that it was the cook's responsibility to put food away, but this is contradicted by his job description which shows that a Dietary Aide's core duties included "maintaining clean and sanitary conditions in the kitchen and dining areas under the supervision of the Dietary Manager or Cook," including by "ensur[ing] proper storage of foods and supplies." . . . Third, [Gladden] states that he was previously told not to stay overtime, which could serve to excuse his failure to complete his duties the evening before he was fired.  But such generalities carry no weight here where [Gladden] does not dispute that Downing specifically assigned him the responsibilities that he did not fulfill.  Finally, [Gladden] questions why the Dietary Aide whom he asked to perform his duties was not disciplined as well despite his also leaving before the kitchen area was secured.  But because the other aide was also African-American, any difference in treatment is not evidence of racial discrimination.  *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 647 (3d Cir. 1998) (explaining that a comparator should show that a similarly situated *nonmember* of a protected class was treated more favorably than a member of the protected class).  And Amber had reason to treat the other aide differently: he was a minor; there is no evidence that he had repeat performance issues; and Ambler had not formally assigned him to finish [Gladden's] job that night, only [Gladden] did.  Given these facts, I separately conclude that even if Plaintiff had established a *prima facie* case, he has not produced sufficient evidence to allow a reasonable fact finder to conclude that the proffered reason for his termination is pretext for illegal discrimination.

FP 47655395.1

Appellant's Brief at p. 26; Appx16-17; <u>see also</u> SAppx144-48.  Further, Gladden's

reliance on the timing of his termination is misplaced because "'timing alone does

not create a genuine issue as to pretext if the plaintiff is unable to prove, through

other circumstantial evidence, that he was terminated for a reason other than that

proffered by the employer.'"  <u>Chase v. Frontier Commc'ns Corp.</u>, 361 F. Supp. 3d

423, 445 (M.D. Pa. 2019) (quoting <u>Pugh v. City of Attica, Indiana</u>, 259 F.3d 619,

628–29 (7th Cir. 2001)); <u>see also</u> <u>Frazier v. Exide Techs.</u>, No. CV.A. 11-1863,

2016 WL 6600262, at *14 n.11 (E.D. Pa. Nov. 8, 2016).

Thus, for the foregoing reasons, this Court should affirm the District Court's

entry of judgment in favor of Ambler with respect to Gladden's retaliation claims.

## B.    The District Court Properly Granted Summary Judgment in Favor of Ambler as to Gladden's Claims of Hostile Work Environment Under Title VII and the PHRA

The District Court's entry of judgment in favor of Ambler as to Gladden's

hostile work environment claims under Title VII and the PHRA should be

affirmed.  To maintain a hostile work environment claim, Gladden must establish:

> (1) that []he suffered intentional discrimination because of [his] race; (2) that the discrimination was severe and pervasive; (3) that the discrimination detrimentally affected [him]; (4) that the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of *respondeat superior* liability.

<u>Davis v. City of Newark</u>, 285 F. App'x 899, 902 (3d Cir. 2008).

35

Gladden has set forth no evidence to establish that he suffered "severe or pervasive" discrimination on the basis of his race, that such discrimination detrimentally affected him, or the existence of employer liability. Instead, Gladden blanketly lists the elements of a hostile work environment and then argues, in a single paragraph, that they've been met because Gladden's co-worker called him a monkey three times in the presence of other co-workers and Ambler did not appropriately respond to those incidents although Ambler was aware of them.[8] ECF No. 15, p. 22. Gladden has failed to establish a hostile work environment claim, and the District Court's well-reasoned decision should be affirmed for the reasons that follow, each of which present an independent basis for affirming the grant of summary judgment.

---

[8]     As the District Court notes, Gladden's contention that Mr. Downing was aware of Ms. Shorr's conduct is not supported by the record. Appx20. Gladden cites his own testimony for this proposition, however, Gladden testified only that Mr. Downing indicated he was aware of Ms. Shorr's conduct at the time of the December 21, 2020 counseling meeting with Gladden, Ms. Shorr, Ms. Pulini, and Mr. Downing (not that Mr. Downing was aware of Ms. Shorr's conduct in the days or months leading up to the meeting). SAppx80. This misrepresentation of the record is also correctly noted by the District Court. See Appx20 ("It was Plaintiff's understanding that Mr. Downing and Ms. Pulini were aware of Shorr's use of the epithet before the kitchen confrontation that Downing himself witnessed, but the record is entirely unclear as to how or when Downing or Pulini would have learned of such episodes without Plaintiff reporting.").

1.    <u>The District Court properly concluded that Gladden failed to establish the existence of severe or pervasive harassment.</u>

The second prong of the prima facie hostile work environment case requires that Gladden establish that the alleged discrimination was severe or pervasive. <u>Davis</u>, 285 F. App'x at 902.  The District Court properly concluded that Gladden failed to demonstrate that the purported harassment was sufficiently severe or pervasive: "the evidence here falls short."  Appx19-20.

"It is well established that to prove the second element of a hostile work environment claim, a plaintiff must show that his workplace was 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  <u>Brooks v. CBS Radio Inc.</u>, 342 F. App'x 771, 776 (quoting <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 116 (2002)).  As the United States Supreme Court has recognized:

> Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance.  Hence, a recurring point in our opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.

37

Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (citations omitted).

Gladden worked for Ambler for almost one and a half years. SAppx84-85. Throughout the course of his employment, Gladden alleges that he was called a monkey by a co-worker (Ms. Shorr) on three occasions while working in the kitchen. SAppx78-79, SAppx81, SAppx84. Gladden does not remember the specific date(s) when these incidents occurred. SAppx78. Gladden admitted that he never reported to Ambler the fact that he was called a monkey by Ms. Shorr, but he was unhappy with the way that this was handled by Ambler. SAppx77-78, SAppx80, SAppx83-84, SAppx137.

As noted by the District Court, Ambler was made aware of Ms. Shorr's comment on December 20, 2020, she was counseled the next day, and, after this counseling meeting, Gladden admits that Ms. Shorr ceased calling him names. SAppx86-87, SAppx89, SAppx114. In fact, Gladden frequently argued and joked with Ms. Shorr. SAppx81, SAppx83-84, SAppx86, SAppx114. When asked whether Gladden ever called Ms. Shorr any names (besides "murderer"), he responded: "Oh, yeah. We used to laugh and joke. I would call her a parrot. I would make squawking noises and everybody would laugh." SAppx86.

With this backdrop, Gladden has not set forth sufficient evidence to demonstrate severe and pervasive racial harassment. "Offhanded comments and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile

work environment claim.  Rather, the conduct must be extreme to amount to a

change in the terms and conditions of employment." Mufti v. Aarsand & Co., Inc.,

667 F. Supp. 2d 535, 545 (W.D. Pa. 2009) (quoting Caver v. City of Trenton, 420

F.3d 243, 262 (3d Cir. 2005) (quotations and citations omitted)); see also

Funayama v. Nichia Am. Corp., No. CIV.A. 08-5599, 2011 WL 1399844, at *11

(E.D. Pa. Apr. 13, 2011) ("Even conduct that is unquestionably offensive and rude

will not rise to the level required to make out a hostile work environment claim

unless it is sufficiently severe.").

Even accepting Gladden's allegation that this happened on three (3)

occasions as true for purposes of this argument only, the conduct alleged does not

rise to the level of "pervasive." See James v. Tri-Way Metalworkers, Inc., 189 F.

Supp. 3d 422, 439-40 (M.D. Pa. 2016) (holding that six occurrences of the use of

racial epithet by coworker over eleven months was not sufficient to demonstrate

pervasiveness); Gharzouzi v. Nw. Hum. Servs. of Pa., 225 F. Supp. 2d 514, 536

(E.D. Pa. 2002) (noting that six incidents in three-month period were not

sufficiently pervasive to constitute hostile work environment).  "[W]hile racial

slurs and epithets are reprehensible, these comments alone are generally not

enough to create a hostile work environment." James, 189 F. Supp. 3d at 439; see

also Singletary v. Missouri Dep't of Corr., 423 F.3d 886, 893 (8th Cir.

2005) (finding that "racial slurs alone do not render a work environment hostile as

39

a matter of law" and that a plaintiff must "show more than a few occurrences over a course of years[; t]o be actionable, such conduct must be shown to occur with such frequency that the very conditions of employment are altered and be viewed by a reasonable person as hostile").

In fact, The District Court compared the instant facts to Castleberry v. STI Grp., 863 F.3d 259, 264-66 (3d Cir. 2017), which held, at the motion to dismiss stage, that the plaintiff's allegations that a supervisor used the "n-word" accompanied by the threat of termination "[w]ithin the same breath" along with allegations of the existence of racially discriminatory comments on sign in sheets was sufficient at "this early stage of litigation."  The District Court correctly distinguished the facts in the case at hand noting that the alleged harassment in this case came from a co-worker, not a supervisor; that Gladden would "laugh and joke" with Ms. Shorr and mock her at times; that Gladden "let it go"; that Gladden did not report the conduct; that Ms. Shorr's conduct did not interfere with Gladden's work performance, discourage him from remaining on the job, or interference with his advancement; and that Ambler's actions stopped the behavior at issue).  As such, Gladden cannot establish that the alleged harassment herein was severe or pervasive.

Because Gladden has not set forth severe or pervasive harassment, the District Court's grant of judgment in Amblers favor as to Gladden's harassment claim should be affirmed.

2.      The District Court properly held that Gladden failed to establish that he was detrimentally affected by the purported harassment.

The third prong of the prima facie hostile work environment case requires that Gladden establish that the alleged discrimination detrimentally affected him. Davis, 285 F. App'x at 902.  As the District Court specifically held, "[t]here is nothing in the record to show that Shorr's comments, ignorant though they were, 'unreasonably interfere(d) with [Gladden's] work performance,' discouraged him from 'remaining on the job,' or interfered with advancement."  Appx20 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-23 (1993)).  Because there is no evidence that the alleged conduct detrimentally affected Gladden, the District Court's grant of summary judgment should be affirmed.

As noted by the District Court, Gladden has offered no evidence that his working conditions suffered or that his work performance suffered as a result of any alleged harassment. Further, Gladden offers no evidence that he was negatively affected by the allegedly harassing acts in any way.  Instead, when asked about his interactions with Ms. Shorr, Gladden  indicated that they used to "laugh and joke."  SAppx86.

41

Futher, although Gladden had ample opportunities and avenues to report any discriminatory behavior to which he was allegedly subjected, he failed to report anything to Ambler.  See SAppx80, SAppx83-84, SAppx173, SAppx222.  "[I]t strains credulity" for a plaintiff to allege that he is detrimentally affected by comments that he never complained about.  See Carter v. Biomat USA, No. CIV.A. 10-4479, 2012 WL 606822, at *7 (E.D. Pa. Feb. 24, 2012).  In Carter, the court found that:

> [plaintiff] never complained to anyone at [employer] about any inappropriate statements.  There are no facts on record that establish [plaintiff's] purported detrimental effect caused by the alleged harassing statements.  It strains credulity for [plaintiff] to allege that comments that [plaintiff] never complained about, but admittedly participated in, and has since forgotten, somehow greatly affected [plaintiff] such that they are actionable under the stringent standards for hostile work environment claims.  Accordingly, [plaintiff] has not come forth with any evidence in support of the fourth element of [plaintiff's] hostile work environment claim and summary judgment must be granted in favor of [employer].

Id.  Indeed, Gladden testified that instead of reporting his interactions with Ms. Shorr, he "let it go."  SAppx80.

Because Gladden has not established that he was detrimentally affected by the alleged harassing conduct, the District Court's grant of judgment in Amblers favor as to Gladden's harassment claim should be affirmed.

42

3.   <u>The District Court properly held that Gladden failed to set forth respondeat superior liability.</u>

The fifth and final prong of the prima facie hostile work environment case requires that Gladden establish *respondeat superior* liability.  <u>Davis</u>, 285 F. App'x at 902.  Although Ambler disputes that Gladden experienced any harassment as a matter of law, if this Honorable Court finds otherwise, Gladden cannot set forth <u>respondeat superior</u> liability because Ambler took remedial action that was reasonably calculated to – and did – prevent further harassment.  As correctly noted by the District Court, "[i]t is undisputed that Mr. Downing convened a meeting with the Administrator the day after Downing saw the employees in a heated exchange, and that counseling session effectively stopped the behavior at issue."  <u>See</u> Appx20.

> When the hostile work environment is created by a victim's non-supervisory coworkers, the employer is not automatically liable.  Rather, employer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action.

<u>Huston v. P&G Paper Prods. Corp.</u>, 568 F.3d 100, 104 (3d Cir. 2009).

Here, Ambler provided reasonable avenues of complaint and Gladden unreasonably failed to take advantage of Ambler's multiple avenues of complaint. SAppx80, SAppx83-84, SAppx222, SAppx173, SAppx231-33, SAppx235.

43

Gladden understood that Ambler had a handbook that he was expected to comply with.  SAppx128.  Gladden affirmed, in writing, his responsibility to read and comply with the policies contained in Ambler's Employee Handbook.  SAppx128, SAppx262.  Further, as an equal opportunity employer, Ambler maintains policies prohibiting discrimination, harassment, and retaliation in the workplace based on, among other things, race.  SAppx231-33.  This policy clearly outlines Complaint/Reporting Procedures and provides that no reprisal, retaliation, or other adverse action will be taken against any employee who makes a good faith report of unlawful discrimination or harassment in the workplace.  SAppx232-33.  Further, notices are posted on Ambler's bulletin board advising employees of their rights against discrimination, harassment, and retaliation under state and federal laws and notifying employees on how to contact Ambler's Corporate Compliance Hotline to report any issues.  SAppx259.  Ambler also maintains an Open-Door Policy to maintain open lines of communication within the organization as a means for employees to resolve work-related problems and concerns.  SAppx235.  Although Gladden had ample opportunities and avenues to report any discriminatory behavior to which he was allegedly subjected, he *admittedly* failed to report anything to Ambler.  SAppx80, SAppx83-84, SAppx173, SAppx222.

Further, Gladden fails to demonstrate that Ambler was "negligent or reckless in failing to train, discipline, fire or take remedial action *upon notice* of

44

harassment." See Andreoli v. Gates, 482 F.3d 641, 644 (3d Cir. 2007) (emphasis added); Mufti, 667 F. Supp. 2d at 545-46. "In order to establish employer negligence, the plaintiff must show that management knew or should have known about the harassment, but 'failed to take prompt and adequate remedial action.'" Jensen v. Potter, 435 F.3d 444, 453 (3d Cir. 2006) (internal citation omitted), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); Huston, 568 F.3d at 104. The Third Circuit has held that a court must consider whether, based on the totality of the circumstances surrounding the alleged harassment, the employer took remedial and preventative steps that were reasonably calculated to prevent further harassment. Knabe v. Boury Corp., 114 F.3d 407, 411-12 (3d Cir. 1997). Here, when the purported harassment was brought to Ambler's attention *by Ms. Shorr*, Ambler took prompt and appropriate remedial action that Gladden testified that the alleged harassing behavior ceased.[9] SAppx86-87, SAppx89, SAppx114.

"In most cases, the focus will be on the timing and nature of the employer's response." Andreoli, 482 F.3d at 644 ("We have found an employer's actions to be adequate, as a matter of law, where management undertook an investigation of the employee's complaint within a day after being notified of the harassment,

---

[9]   Mr. Downing became aware of the comment on December 20, 2021, one day before the meeting. SAppx174-75. Ms. Pulini became aware of the comment on December 21, 2021, the same day as the meeting. SAppx221.

spoke to the alleged harasser about the allegations and the company's sexual harassment policy, and warned the harasser that the company does not tolerate any sexual comments or actions.").  As the District Court held "[a]s a rule, an 'employer cannot be liable under Title VII if its remedial action stopped the harassment."  Appx20.  See also Knabe, 114 F.3d at 412 n.8 ("A remedial action that effectively stops the harassment will be deemed adequate as a matter of law.").

In Knabe, the Third Circuit affirmed the trial court's grant of summary judgment and found that warning an alleged harasser that "the 'company does not tolerate any [harassing] comments or actions [and that] violations of this policy will receive possible suspension and/or termination'" was an adequate remedial action because it was "reasonably calculated to prevent further harassment."  Id. at 412-13.  Despite Gladden's unsupported claims otherwise, there is no indication on the record that Ambler was on notice of Ms. Shorr's comment prior to December 20, 2020, or that they were ever on notice of any other incident where Ms. Shorr called Gladden a monkey.

Thus, because Gladden failed to utilize the readily-available complaint procedures and the allegedly offending commentary by Ms. Shorr stopped after the December 21, 2020 counseling meeting, the action taken by Ambler was adequate as a matter of law, and, therefore, the District Court's grant of judgment in Ambler's favor should be affirmed.

## VI.    CONCLUSION

For the reasons stated above, the District Court correctly concluded that summary judgment was appropriate as to Appellant, Stefan Gladden's claims for retaliation and hostile work environment under Title VII of the Civil Rights Act and under the Pennsylvania Human Relations Act.  Accordingly, the judgment of the District Court should be **<u>affirmed</u>** for the reasons set forth in the District Court's Memoranda or for the reasons as set forth above.

Respectfully submitted,

**FISHER & PHILLIPS LLP**

Date:  July 12, 2023

*/s/ Michael R. Galey*
Michael R. Galey, Esquire
Deniz Uzel Reilly, Esquire
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone:  (610) 230-2150
mgaley@fisherphillips.com
dreilly@fisherphillips.com
*Attorneys for Defendant Ambler
Healthcare Group, LLC d/b/a Ambler
Extended Care Center*

FP 47655395.1

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

### Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.   This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[X]   this brief contains 10,178 words, or

[ ]   this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2.   This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]   this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14 point Times New Roman font, or

[ ]   this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Date:  July 12, 2023

*/s/ Michael R. Galey*
Michael R. Galey, Esquire
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone:  (610) 230-2150
dreilly@fisherphillips.com
*Attorneys for Defendant Ambler*
*Healthcare Group, LLC d/b/a Ambler*
*Extended Care Center*

48

## CERTIFICATE OF BAR ADMISSION

The undersigned counsel hereby certifies that the attorneys whose names appear on the Brief of Appellee are members of the Bar of this Court.

Date: July 12, 2023

*/s/ Michael R. Galey*
Michael R. Galey, Esquire

## CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

The undersigned counsel hereby certifies that the text of the electronic version of the Brief of Appellee filed through the Court's ECF system is identical to the text of the paper copies of the Brief of Appellee served upon the Court and Appellant.

Date: July 12, 2023

*/s/ Michael R. Galey*
Michael R. Galey, Esquire

## CERTIFICATE OF VIRUS CHECK COMPLIANCE

The undersigned counsel hereby certifies that the Symantec Endpoint Protection virus detection program was run on the electronic version of the Brief of Appellee and no virus was detected.

Date: July 12, 2023

*/s/ Michael R. Galey*
Michael R. Galey, Esquire

49

## <u>CERTIFICATE OF SERVICE</u>

I, Michael R. Galey, Esquire, hereby certify that on this 12th day of July

2023, a true and correct copy of the Brief of Appellee was filed electronically and

is available for viewing and downloading from the Court's ECF system and was

served upon the following via the Court's ECF system:

> Graham F. Baird, Esquire
> Law Offices of Eric A. Shore, P.C.
> 1500 JFK Boulevard, Suite 1240
> Philadelphia, PA 19335
>
> *Counsel for Appellant, Stefan Gladden*

In addition, pursuant to this Court's Order dated May 2, 2023, seven (7)

copies of the Brief of Appellee will be delivered via courier to the Clerk of the

United States Court of Appeals for the Third Circuit.

> */s/ Michael R. Galey*
> Michael R. Galey, Esquire

FP 47655395.1